# IN THE UNITED STATES DISTRICT
## COURT DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| WALTER ROSS HENDLEY | § | MDL NO. 2873 |
| | § | |
| *Plaintiff,* | § | MASTER DOCKET NO: 2:18-mn-2873 |
| v. | § | |
| | § | JUDGE RICHARD GERGEL |
| 3M COMPANY (F/K/A MINNESOTA | § | |
| MINING AND MANUFACTURING | § | CIVIL ACTION NO: 2:22-cv-4417-RMG |
| COMPANY); ACG CHEMICALS | § | |
| AMERICAS, INC.; AMEREX | § | PLAINTIFF'S ORIGINAL COMPLAINT |
| CORPORATION; ARCHROMA | § | AND JURY DEMAND |
| MANAGEMENT, LLC; ARCHROMA U.S., | § | |
| INC.; ARKEMA, INC.; BASF | § | |
| CORPORATION; BUCKEYE FIRE | § | |
| EQUIPMENT COMPANY; CARRIER | § | |
| GLOBAL CORPORATION; CHEMDESIGN | § | |
| PRODUCTS, INC.; CHEMGUARD, INC.; | § | |
| CHEMICALS, INC.; CHEMOURS | § | |
| COMPANY FC, LLC; CHUBB FIRE, LTD; | § | |
| CLARIANT CORP.; CORTEVA, INC.; | § | |
| DEEPWATER CHEMICALS, INC.; | § | |
| DUPONT DE NEMOURS INC. (F/K/A | § | |
| DOWDUPONT INC.); DYNAX | § | |
| CORPORATION; E.I. DU PONT DE | § | |
| NEMOURS AND COMPANY; FIRE | § | |
| PRODUCTS GP HOLDING, LLC; KIDDE- | § | |
| FENWAL, INC.; KIDDE PLC; NATION | § | |
| FORD CHEMICAL COMPANY; | § | |
| NATIONAL FOAM, INC.; THE | § | |
| CHEMOURS COMPANY; TYCO FIRE | § | |
| PRODUCTS, LP, AS SUCCESSOR-IN- | § | |
| INTEREST TO THE ANSUL COMPANY; | § | |
| UNITED TECHNOLOGIES | § | |
| CORPORATION; UTC FIRE & SECURITY | § | |
| AMERICAS CORPORATION, INC. (F/K/A | § | |
| GE INTERLOGIX, INC.) | § | |
| | § | |
| *Defendants.* | § | |

## COMPLAINT

COMES NOW, Plaintiff, by and through the undersigned counsel, alleges upon information and belief as follows:

## INTRODUCTION

1.     Plaintiff brings this action for damages for personal injury resulting from exposure to Aqueous Film-Forming Foams ("AFFF") containing the toxic chemicals. These chemicals are known as Per- and Polyfluoroalkyl Substances ("PFAS"). PFAS includes, but is not limited to, Perfluorooctanoic Acid ("PFOA") and Perfluorooctane Sulfonic Acid ("PFOS") and related chemicals, including those that degrade to PFOA and/or PFOS.

2.     AFFF is a specialized foam designed to extinguish high hazard flammable liquid fire, Class B fires. For decades, military, civilian and municipal firefighter, and commercial businesses have used it to extinguish fires in training and in response to Class B fires.

3.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, marketed, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly toxic and biopersistent PFASs, which would expose end-users of the product to the risks associated with PFAS.

4.     Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, marketed, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

5.     Due to PFAS's unique chemical structure, PFAS accumulates in the blood and body of exposed individuals. PFAS, also known as "forever chemicals," when absorbed, binds to proteins in the blood of humans exposed to the material and remains and persists over long time

periods. This applies to both the original "long-chain" PFAS chemical and the "short-chain" versions developed that were touted to be safe.

6.      PFAS are highly toxic and carcinogenic chemicals. These chemicals have been long determined to be health risks. Defendants knew, or should have known, that PFAS remains in the human body and presents significant health risks to humans.

7.      Defendants' PFAS-containing AFFF products were used by Plaintiff in their intended manner, without significant change in the products' condition. Plaintiff was unaware of the dangerous properties of Defendants' AFFF products and relied on Defendants' instructions for proper handling of the products. Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Plaintiff to develop the severe medical conditions and complications alleged herein.

8.      Through this action, Plaintiff seeks to recover compensatory and punitive damages arising out of the permanent and significant injuries sustained as a direct result of exposure to Defendants' AFFF products at various locations during the course of Plaintiff's training and firefighting activities.

9.      When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment, or agency.

10.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendant.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this controversy pursuant to because 28 U.S.C. §1332(a)(1), because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

12.    Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Western District of North Carolina. Further, in accordance with CMO 3, Plaintiff designates the United States District Court for the Western District of North Carolina as the home venue. Venue is originally proper in the Federal Court according to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff was a resident and/or citizen, a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

## PARTIES

13.    Walter Ross Hendley ("Plaintiff") is a resident and citizen of the United States residing in Wadesboro, North Carolina 28170.

14.    Plaintiff at any given time, regularly used, and therefore exposed directly to, AFFF during firefighter training and official service duties.

15.    Plaintiff was diagnosed with Colon Cancer as a direct result of exposure to Defendants' AFFF products.

16.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production.

17.    The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiff during the course of training and firefighting activities.

18.    Defendant 3M Company f/k/a Minnesota Mining and Manufacturing Company ("3M") is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

19.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to PFAS-containing AFFF for firefighting use.

20.    Defendant AGC Chemicals Americas, Inc. ("ACG") is a Delaware corporation and does business throughout the United States. ACG has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

21.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

22.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

23.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

24.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

25.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

26.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

27.    BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

28.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

29.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

30.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995

Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

31.      Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

32.      Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

33.      ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.      Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

35.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

36.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

37.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

39.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

40.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

41.     Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

42.     Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

43.     Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

44.     Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

45.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

46.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E. County Road 735, Woodward, Oklahoma 73801.

47.     Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises the subject of this

Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

48.     Defendant DuPont de Nemours, Inc., f/k/a DowDuPont, Inc. ("DowDuPont") is a Delaware corporation and does business throughout the United States. DowDuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDuPont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing fluorosurfactants to AFFF manufacturers.

49.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

50.     Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Dynax has its principal place of business at 103 Fairview Park Drive, Elmsford, New York 10523.

51.     Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials,

promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

52.     Defendant E. I. du Pont de Nemours and Company ("DuPont") is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

53.     DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

54.     Defendant Fire Products GP Holding, LLC ("Fire Products GP") is a Delaware corporation that conducts business throughout the United States. Fire Products GP has its principal place of business at The Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, Fire Products GP is a minority shareholder of Tyco Fire Products, LP.

55.     Fire Products GP designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

13

56.     Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware and does business throughout the United States. Kidde-Fenwal has its principal place of business at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

57.     Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

58.     Defendant Kidde P.L.C. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

59.     Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

60. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

61. Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

62. Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina 27501.

63. National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

64. Defendant The Chemours Company ("Chemours") is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

65. Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

66. Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

67. Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

68. Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

16

69.     United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

70.     Defendant UTC Fire & Security Americas Corporation, Inc. f/k/a GE Interlogix, Inc. ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has a principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

71.     UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

72.     Defendant, Archroma Management, LLC, is a foreign corporation and does business throughout the United States, including conducting business in South Carolina. Archroma Management, LLC has its principal place of business at Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

73.     Archroma Management, LLC is successor to Clariant Corporation's Textile Chemicals, Paper Specialties, and Emulsions businesses who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

74.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation and does business throughout the United States, including conducting business in South Carolina. Archroma has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

75.     Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint, including in South Carolina, in such a way as to result in the contamination of Plaintiff's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

76.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

77.     Unless otherwise stated, the term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

## FACTS

### A.    AFFF EXPOSURE

78.    Plaintiff underwent firefighter training in November 1974 and served with the Union County Fire Department in Marshville, North Carolina, until 1997.

79.    Plaintiff had consistent exposure to AFFF during his career as a civilian firefighter. Exposure includes, but is not limited to, extinguishing Class B fires with AFFF and storage of AFFF.

80.    At no time during training nor service did Plaintiff know, or made aware, that AFFF causes injuries to himself and other humans within the proximity.

### B.    AFFF COMMERCIALIZATION

81.    AFFF is a combination of fluorocarbons, surfactants, and solubilizers widely used due to its highly efficient ability to extinguish hydrocarbon fuel-based fires or Class B fires.

82.    AFFF's fluorochemical-based surfactant produces an aqueous film that spreads across the surface of the fire, creating a barrier between the hydrocarbon fuel, thereby suppressing the flame, depriving the fuel of oxygen, and preventing reignition.

83.    In the 1940s, 3M researched and manufactured PFAS. Further research revealed PFAS chemically breaks down to PFOS and PFOA.

84.    In the 1960s, Naval Research Laboratory, in cooperation with 3M, conducted research with PFAS in combination with AFFF to suppress hydrocarbon fuel-based fire, otherwise known as Class B fire. Due to PFAS-containing AFFF's fire suppression effectiveness, AFFF applications rapidly spread across the country.

85.    For decades, Defendants manufactured and sold AFFF and PFAS for use in AFFF that was used by civilian fire departments, including the Union County Fire Department.

86.    PFOA and PFOS within AFFF are non-naturally occurring, man-made products. PFOS and PFOA are incredibly persistent in the environment and resistant to heat and natural environmental degradation. The chemical bond between the carbon and fluorine atoms is powerful and stable, hence the nickname "forever chemicals." The chemical bonds allow them to survive for years and accumulate in the human body.

87.    Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, marketed, sold, and/or otherwise handled PFAS-containing AFFF used around the country by the military, civilian and municipal firefighter and commercial businesses.

88.    Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used PFAS-containing AFFF, in such a way as to cause the contamination of Plaintiff's body with PFAS, and the resultant bio-persistence and bioaccumulation of such PFAS in the body of Plaintiff.

### C.    KNOWLEDGE OF HEALTH RISKS

89.    Although AFFF is efficient at extinguishing fires, the U.S. Environmental Protection Agency ("EPA") stated that PFAS-containing AFFF poses significant health risks.

90.    PFOS and PFOA have unique characteristics that cause extensive and persistent environmental and bodily contamination. First, they are mobile because they do not absorb with soil particles. This allows them to be readily transported through the soil and into groundwater, where they can migrate long distances. Second, they are biopersistent because they do not readily biodegrade or chemically degrade in the environment or in conventional treatment systems for

20

drinking water. Third, they are bioaccumulating because they bind to blood proteins with each exposure and are not readily excreted from the body.

91.    After PFAS molecules bind to blood proteins, they are disbursed throughout the body. PFAS chemicals primarily accumulate in the blood, liver, and kidneys, leading to various health risks.

92.    AFFF exposure has been linked to, but is not limited to, an increased risk for individuals to develop asthma, thyroid disease, fertility problem, ulcerative colitis, and liver disease. Malignancies risk includes bladder cancer, breast cancer, leukemia, lymphoma, kidney cancer, pancreatic cancer, prostate cancer, and testicular cancer.

93.    In the 1950s to 1960s, Defendants' animal and human studies linked PFOS and PFOA exposure with hazardous effects on the liver, testes, adrenals, and other organs and bodily systems.

94.    In 1961, Defendants, including at least DuPont, toxicologist warned PFAS enlarged rat and rabbit livers, but at the time concealed it from the public. Additional research and testing performed by Defendants' manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a rat cancer study, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

95.    In 1963, Defendants, including at least 3M, deemed PFAS as toxic but at the time concealed it from the public. Additionally, 3M's own employees recognized that 3M was concealing known dangers relating to PFAS with a resignation letter referencing the harm.

96.    In the 1980s, a Naval study found that AFFF has an adverse environmental effect and kills aquatic life.

97.     In the 1980s, Defendants', including at least 3M and DuPont, research and testing revealed their own employees had higher levels of PFOS and PFOA in their blood and can pass from mother to unborn child through the umbilical cord, causing congenital fetal disabilities.

98.     In 1984, Defendants, including at least 3M, found PFOA and PFOS are biopersistent and bioaccumulates in the human body. This is especially true for "long-chain" chemicals.

99.     In the 1990s, Defendants' research, including 3M and DuPont, revealed that PFOA caused rats to develop testicular, liver, and pancreatic cancer.

100.    In 1999, the EPA and Defendants, including at least 3M, found that PFAS chemicals are now present in blood banks around the country.

101.    In 2000, 3M voluntarily began to phase out and cease production of PFOS and PFOA products to transition to short-chain PFAS and released a statement that their "products are safe," including the short-chain PFAS.

102.    In May 2000, the EPA released a statement based on the data supplied by 3M "that these chemicals [PFAS] are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term."

103.    In 2005, the EPA advisory panel concluded that PFOA is likely to have carcinogenic effects on humans.

104.    In 2006, the EPA issued a guidance program, Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and corrective action, Resource Conservation and Recovery Act ("RCRA") to address PFAS's hazardous impact and protect the

environment and public health. The program encouraged all major manufacturers to stop producing products with PFAS.

105.    In 2007, a study revealed that approximately 98 percent of the American population have PFOS and/or PFOA in their body. PFOS and PFOA blood levels were approximately 1000 times higher in firefighters than in the general population. Blood samples from countries without PFAS manufacturing and/or usage contained no presence of PFAS chemicals.

106.    In 2009, the EPA issued a "lifetime drinking water health advisory," recommending a maximum of 200 parts per trillion for PFOS and 400 parts per trillion for PFOA. In 2016, after further research, the EPA dropped the maximum to 70 parts per trillion. In 2019, a study by the Agency for Toxic Substances and Disease Registry expressed that the limit for PFOS and PFOA in drinking water should be lowered to about 7 to 11 parts per trillion, while some experts believe it should be below 1 part per trillion.

107.    By the end of 2010, Defendants' research and testing revealed that manufacturing and/or using PFAS increased additional health consequences such as hormone changes, lipid changes, thyroid complications.

108.    In 2011, the Department of Defense ("DOD") acknowledged the existing PFAS crisis. The DOD estimated 594 military sites deemed likely to have contaminated groundwater. In 2018, The DOD confirmed that 297 military bases have contaminated groundwater and hundreds more suspected. Surveys conducted in areas near military bases revealed groundwater contained PFOA and PFOS concentration up to 12,000 parts per trillion.

109.    In 2012, a landmark study revealed a likely link between PFOA exposure and testicular cancer, kidney cancer, high cholesterol, ulcerative colitis, thyroid disease, and pregnancy-induced hypertension.

23

110.    In March 2018, states such as Washington started taking more action to handle the PFAS crisis. Washington passed law Washington State 2018, restricting the sale and use of Class B foams that contain PFAS. On July 1, 2018, PFAS-containing foams may not be discharged or otherwise used in the state of Washington for training purposes. On July 1, 2020, PFAS-containing foams may be sold or distributed in the States only for applications where federal law requires the use of PFAS foam, petroleum terminals, oil refineries, and chemical plants. States such as Texas and New Jersey conducted their own research and found PFAS chemicals adversely affected mammary glands, the endocrine system, and vaccine efficiency.

111.    In August 2019, after additional rat study of PFAS's effect revealing increased liver and kidney weight and increased spleen size, DuPont endorsed regulation of PFOA and PFOS. They expressed that the EPA should deem the chemicals hazardous substances and set a drinking water standard within two years.

112.    When the EPA and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly and consistently assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

113.    After the EPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began researching, manufacturing, marketing, selling, and/or otherwise supplying alternative PFAS materials with six or fewer carbons, known as "short-chain" PFAS.

114.    Defendants' manufacturing and/or using short-chain PFAS, including at least DuPont and 3M, are aware that one or more such short-chain PFAS materials also have been found in human blood.

115.    Research and testing performed by and/or on behalf of Defendants making and/or using short-chain PFAS indicate that such short-chain PFAS materials present the same, similar, and/or additional risks to public health as had been found in research on other PFAS materials, including cancer risk.

116.    Defendants knew for at least 40 years that PFAS chemicals were accumulating in peoples' blood. Nevertheless, Defendants repeatedly and consistently assured and represented to governmental entities and the public that the presence of PFAS, including short-chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

117.    At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

118.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or

medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

119.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

120.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

121.    There is no naturally occurring "background," standard, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

122.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff from discovering the existence and extent of any injuries/harm as alleged herein.

123.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any

potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

124.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiff's blood.

125.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of PFAS-containing AFFF and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

126.    To this day, Defendants deny the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

127.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind exist that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

128.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease to warrant diagnostic medical testing, often referring to existing studies or

27

data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

129.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of PFAS-containing AFFF would result in the contamination of the body of Plaintiff with PFAS, and the biopersistence and bioaccumulation of such PFAS in his body.

130.    Defendants were and/or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the body of Plaintiff would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiff.

131.    Defendants did not seek or obtain permission or consent from Plaintiff before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiff's exposure to AFFF and the contamination of Plaintiff's body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in his body.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

132.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

133.    Defendants have a duty to apply a level of care commensurate with the foreseeable harm arising to Plaintiff from their control in designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing related to the AFFF product.

134.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by failing to design the products so as to avoid an unreasonable risk of harm to Plaintiff.

135.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to Plaintiff.

136.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to Plaintiff.

137.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to Plaintiff.

138.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to Plaintiff.

139.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by negligently or carelessly designing, manufacturing, marketing, distributing, and warning.

140.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the designing, manufacturing, labeling, warning, instructing, training, selling, marketing, and distributing of the AFFF products or underlying PFAS containing chemicals used in AFFF production by selling and or distributing a product which was inherently dangerous to the public.

141.    Plaintiff is a foreseeable victim of the harm caused by Defendants' PFAS-containing AFFF.

142.    As a direct and proximate result of Defendants' breach of their legal duties, Plaintiff has developed colon cancer, severe and permanent pain and suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in their favor for compensatory and punitive damages, together with delay damages, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## COUNT II – BATTERY

143.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

144.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

145.    At all relevant times, Defendants possessed knowledge that the PFAS-containing AFFF which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio- persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in Plaintiff's blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiff's blood.

146.    Despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in PFAS persisting and accumulating in Plaintiff's body.

147.    Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's body, or to persist in and/or accumulate in Plaintiff's body.

148.    Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's person and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's body.

149.    At all relevant times, the PFAS present in the blood of Plaintiff originated from Defendants' acts and/or omissions.

150.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that resulted in persisting and accumulating levels of PFAS in Plaintiff's body.

151.    Plaintiff, and any reasonable person, would find the contact at issue harmful and/or offensive. Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

152.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's body.

153.    The continued presence, persistence, and accumulation of PFAS in the body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

154.    The presence of hazardous PFAS in Plaintiff's body altered the structure and/or function of such body parts, resulting in cancer.

155.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered physical injury for which Defendants are therefore liable.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – INADEQUATE WARNING

156. The preceding paragraphs are incorporated by reference as if fully alleged herein.

157. At all relevant times, Defendants were in the business of designing, marketing, developing, manufacturing, distributing, releasing, training users, producing instructional materials, sold, and/or otherwise released into the stream of commerce AFFF with the knowledge that it contained highly toxic and biopersistent PFASs.

158. Defendants had a duty to warn Plaintiff of the risks associated with the reasonably foreseeable use of their products.

159. Defendants failed to provide sufficient warning, if not any, to purchasers and end users that the use of their AFFF products would release PFASs and cause the exposure and bioaccumulation of these toxic chemicals in Plaintiff's body.

160. Defendants knew and/or should have known the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling PFAS-containing AFFF was hazardous to human health.

161. Defendants knew and/or should have known the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, and selling PFAS-containing AFFF would resulting in contamination of Plaintiff's blood.

162.    Adequate warning, disclosure, training, and instruction for PFAS-containing AFFF would have mitigated or prevented Plaintiff from these foreseeable risks of harm and injuries to Plaintiff.

163.    Defendants' negligent failure to warn directly and proximately caused the harm and damages suffered by Plaintiff.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – DESIGN DEFECT

164.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

165.    The PFAS-containing AFFF was designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling of such produce was unreasonably dangerous under the circumstances.

166.    Defendants, as manufacturers, sellers, and distributors of PFAS-containing AFFF placed such product into the stream of commerce, as such are guarantors of their PFAS-containing AFFF.

167.    Defendants knew of the dangerous and hazardous properties of their PFAS-containing AFFF. Defendants could and/or should have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have mitigated or prevented reasonably foreseeable harm to Plaintiff, if not all, caused by the Defendants.

168.    Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF and/or PFAS had the capacity to enter human body, and persist and accumulate in the body for decades, resulting in harm to human health.

169.    The PFAS-containing AFFF that was designed, manufactured, marketed, distributed, and sold by Defendants was extremely hazardous, toxic, and dangerous to human health that their act of designing, formulating, manufacturing, marketing, distributing, and selling PFAS-containing AFFF was unreasonably dangerous under the circumstances.

170.    PFAS-containing AFFF designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have mitigated or prevented by adopting a reasonable alternative design that was not unreasonable dangerous.

171.    Defendants' defective design and formulation of PFAS-containing AFFF was a direct and proximate cause of the contamination of the blood and/or body of Plaintiff and the persistence and accumulation of PFAS in Plaintiff's blood and/or body.

172.    Defendants' defective design and formulation of PFAS-containing AFFF caused the contamination described herein resulting in personal injuries to Plaintiff. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiff has been exposed to PFAS-containing AFFF developed colon cancer. Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiff.

WHEREFORE, the Plaintiff pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V – STRICT LIABILITY (STATUTORY)

173.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

174.    Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each Defendant.

175.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

176.    AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

177.    Defendants' product was a direct and proximate cause to Plaintiff's injury, sustaining severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

178.    Defendants are strictly liable in tort to Plaintiff for their wrongful conduct.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – STRICT LIABILITY (RESTATEMENT)

179.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

180.    Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

181.    As designed, manufactured, marketed, tested, distributed and/or sold by the Defendants the PFAS-containing AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiff.

182.    Defendants had available reasonable alternative designs which resulting in a safer AFFF product and would have most likely prevented the injuries and damages to Plaintiff, thus violating state law and the Restatement of Torts.

183.    Defendants failed to properly and adequately warn and instruct purchaser and end-user, including Plaintiff, as to the proper safety and use of the Defendants product.

184.    Defendants failed to properly and adequately warn and instruct purchaser and end-user, including Plaintiff, regarding the research and testing result of the product.

185.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

186.    Defendants' product is the proximate cause to Plaintiff's injury, sustaining severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

187.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiff, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – FRAUDULENT CONCEALMENT

188.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

189.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

190.    Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiff, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

191.    Defendants were under a duty to the Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

a.    Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

b.    Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

c.    Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiff.

192.    The facts concealed and/or not disclosed by Defendants to the Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

193.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Plaintiff would use the Defendants' products, the Plaintiff justifiably acted or relied upon, to Plaintiff's detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiff's use of the Defendants' products.

194.    Defendants, by concealment or other action, intentionally prevented the Plaintiff from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiff for Plaintiff's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiff was thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

195.    As a proximate result of Defendants' conduct, the Plaintiff has been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

196.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

197.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

198.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

199.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiff.

200.    The Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

201.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper

## IX - WANTONNESS

202.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

203.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

204.    Defendants breached the duty of care owed to the Plaintiff.

205.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Plaintiff.

206.     As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's injury.

WHEREFORE, the Plaintiff prays judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF STATUTE OF LIMITATIONS

### DISCOVERY RULE TOLLING

207.     Based on the nature of said Complaint, Plaintiff had no method of knowing about the risk of serious injury associated with the PFAS-containing AFFF.

208.     Plaintiff could not have discovered through the exercise of reasonable due diligence that PFAS-containing AFFF would result in adverse health conditions within the applicable statute of limitations.

209.     Plaintiff did not discover nor know of facts that would cause a reasonable person to suspect the risks associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff have shown AFFF could cause personal injury.

210.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

211.     All applicable statute of limitations have all been tolled by Defendants knowledge and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to the is action.

41

212.    Defendants have consistently and repeatedly falsely represented the safety of AFFF products.

213.    Due to Defendants' fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Estoppel

214.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

215.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

216.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

### DAMAGES AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff, request relief and judgment against Defendants as follows:

a.    For a judgment against Defendants for the causes of action alleged against it;

b.    For damages in an amount to be proven at trial;

c.    For an order of restitution and all other forms of equitable monetary relief;

d.    Appoint a receiver or sequester Defendants' assets if it has been ordered by this Court to make restitution and Defendants have failed to do so within three months after the order to make restitution has become final and non-appealable;

e.    For a declaration that Defendants' conduct as alleged herein is illegal and unlawful;

f.    For appropriate injunctive relief, enjoining Defendants from continuing to engage in illegal and unlawful conduct;

g.    For all available actual and/or statutory damages;

h.    For punitive damages;

i.    For pre-judgment and post-judgment interest;

j.    For Plaintiff's attorneys' fees, costs, and expenses; and

k.    For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 7, 2022                 Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

_/s/Adam T. Funk_
Adam T. Funk
Texas Bar No. 24058657
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel: (713) 963-8881
Email: afunk@potts-law.com

**ATTORNEYS FOR PLAINTIFF**